**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

| | | |
|---|---|---|
| CARMELLA TIDMORE, | ) | CASE NO. 1:20-CV-02004-CEH |
| | ) | |
| Plaintiff, | ) | CARMEN E. HENDERSON |
| | ) | UNITED    STATES    MAGISTRATE |
| v. | ) | JUDGE |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **MEMORANDUM  OF  OPINION  AND** |
| | ) | **ORDER** |
| Defendant, | ) | |
| | ) | |

## I. Introduction

Plaintiff, Carmella Tidmore ("Tidmore" or "Claimant"), seeks judicial review of the final

decision of the Commissioner of Social Security denying her application for Disability Insurance

Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c)

and Fed. R. Civ. P. 73. For the reasons set forth below, the Court REVERSES the Commissioner

of Social Security's nondisability finding and REMANDS this case to the Commissioner and the

ALJ under Sentence Four of § 405(g).

## II. Procedural History

On January 5, 2018, Claimant filed applications for DIB, alleging a disability onset date

of March 1, 2017. (ECF No. 12, PageID #: 296, 93). The application was denied initially and

upon reconsideration, and Claimant requested a hearing before an administrative law judge

("ALJ"). (ECF No. 12, PageID #: 173, 188, 205). On September 25, 2019, an ALJ held a

hearing, during which Claimant, represented by counsel, and an impartial vocational expert

testified. (ECF No. 12, PageID #: 113). On November 8, 2019, the ALJ issued a written decision

finding Claimant was not disabled. (ECF No. 12, PageID #: 90). The ALJ's decision became

final on July 9, 2020, when the Appeals Council declined further review. (ECF No. 12, PageID

#: 79).

On September 4, 2020 Claimant filed her Complaint to challenge the Commissioner's

final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 15 &

17). Claimant asserts the following issue for review: "Whether the Administrative Law Judge's

decision that Plaintiff can perform sedentary work is supported by substantial evidence when he

failed to consider Plaintiff's psychological impairments severe, and failed to properly analyze

Plaintiff's complaints pursuant to SSR 16-3p. [sic]" (ECF No. 15 at 1).

## III. Background

### A.  Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> The claimant testified that she has aches and pains in her hands,
> legs, and hips that is "always there," but testified that fatigue is the
> primary reason she is limited in her ability to work. The claimant
> said that she sleeps poorly at night due to pain, and has to nap
> several times a day [sic]. The claimant said that she also gets
> headaches and developed knee pain after hip replacement surgery.
> She said that she is limited in her ability to stand because she
> develops spasms and her legs tire. The claimant also said that she
> has become depressed by her loss of functioning and physical pain.
> She said that she sees a psychologist and feels overwhelmed. The
> claimant said that her conditions are treated by a number of
> medications, including gabapentin, which causes dizziness. As for
> her daily activities, the claimant said that when she does not have
> any appointment, she spends the day resting. She said that she
> performs minimal chores in her home, and must use a shower chair
> to bathe. (Hearing testimony).

(ECF No. 12, PageID #: 101).

### B.  Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

2

Treatment records support the claimant's allegations of persistent musculoskeletal pain associated with arthritis and an autoimmune condition that contains features of both lupus and mixed connective tissue disease. In the remote past, the claimant was diagnosed with lupus, which was treated with prednisone, and plaquenil. Unfortunately, this led to the development of avascular necrosis which resulted in the claimant having bilateral hip replacements. In approximately 2003, the claimant developed bronchiolitis obliterans with organizing pneumonia, which resulted in scarring from her lungs. This condition was also treated with prednisone. When the claimant was seen for a consultative examination by Jeff Kirschman, M.D., in 2018, she reported no current use of prednisone or inhalers to treat her breathing impairment. (Ex. 4F/2)

An MRI of the claimant's brain in December 2016 was performed to diagnose bilateral paresthesias of the upper extremities, and showed evidence that she had a remote infarct. (Ex. 1F/6; 2F/11, 70). This imaging also included the cervical spine, and showed mild bilateral neural foraminal narrowing at the level of C4-C5, and a diffuse bulge at the level of C5-C6, also resulting in canal and neural foraminal narrowing.

Because these MRI findings regarding the claimant's brain suggested possible demyelinating disease, the claimant was referred to the neurology department at Cleveland Clinic, where she has been followed by Romeo Craciun, M.D. At his initial evaluation of the claimant on February 28, 2017, she reported experiencing numbness in the right side of her face, dizziness, lightheadedness, occasional palpitations and some near syncopal episodes. (Ex. 2F/66). Dr. Craciun observed that the MRI of the claimant's cervical spine did not reveal any spinal cord compression, which indicated some other etiology for the tingling and numbness symptoms. He scheduled a tilt table test to evaluate her for postural orthostatic hypotension syndrome (POTS). He also scheduled a skin biopsy to rule out small fiber sensory neuropathy. These notes indicate that the claimant recently had an echocardiogram, which revealed an ejection fraction of 61, and no evidence of serious cardiological pathology. (Id., 67).

The tilt table testing did not indicate a definite diagnosis of POTS, but the claimant's skin biopsy was consistent with the diagnosis of mild non-length dependent small fiber sensory neuropathy. (Ex. 2F/126, 153; 3F/65; 7F/98-99). Dr. Craciun's physical exam of the claimant when she returned to see him on May 3, 2017 documents that she exhibited some hesitancy walking with a tandem gait, but

3

no difficulty turning and changing directions. He found full symmetric strength in all extremities, and minimal decrease in pinprick and light touch sensation in stocking-glove distributions in the upper limits at the knees and elbows. The claimant returned to see Dr. Craciun several times, and his notes continue to document these findings over time, although at some of her appointments in 2018, Dr Craciun describes her gait as normal. His overall diagnostic impression was that the claimant had mild POTS and small fiber sensory neuropathy. (Ex. 2F/22, 37; 3F/83, 108; 6F/18; 9F/4; 10F/10).

The claimant was also being treated in several other departments at the Cleveland Clinic for evaluation of her reported symptoms of dizziness, tingling, pain and fatigue.

Cardiologist Carolyn Casserly M.D. saw the claimant for evaluation of complaints of heart palpitations and a racing heart. She ordered a Holter monitor in 2017, which showed some episodes of marked sinus arrhythmia and periods of sinus tachycardia. (Ex. 3F/2, 14). The claimant also had a stress echocardiogram, which showed normal LV function. The claimant developed shortness of breath during testing, but testing was negative for ischemia. (Ex. 3F/15; 7F/57).

Rheumatologist Linda Meleti M.D. saw the claimant for evaluation in 2017, noting the claimant's past treatment in the rheumatology department prior to 2007. The treatment notes show that in 2001, the claimant had a skin biopsy that confirmed lupus. At this appointment, the claimant complained of numbness and tingling in her hands and face, occasional chest pain, constant joint pain and daily morning stiffness in the knees, hips, and shoulder. (Ex. 1F/2). Laboratory work showed elevated factor VIII lupus anticoagulant and antiphospholipid antibody testing, which was concerning for venous thrombosis, but also indicative of elevated inflammation. A lower extremity venous duplex was normal, and showed no significant change since prior study in 2011. (Ex. 2F/151, 176).

The claimant had another rheumatologic evaluation with Alla Model, M.D. in October 2018 for evaluation of mixed connective tissue disease. She endorsed symptoms of joint pain, swelling, morning stiffness, muscle weakness, back pain, headaches, dizziness, numbness and tingling. Physical examination showed no joint swelling, deformity or tenderness, a normal gait, grossly intact sensation, normal reflexes. Dr. Model concluded that the claimant appeared to have a clinical presentation consistent with polyarthritis, but noted no synovitis or other symptoms of

4

inflammatory arthritis. (Ex. 10F/19, 23).

Was also seen in the hematology and oncology department by Christy Samaras, D.O. also ordered bloodwork, which showed monoclonal paraproteinemia, also described in the record as monoclonal gammopathy of undetermined significance (MGUS). Dr. Samaras monitored this condition for the possible development of multiple myeloma, due to the findings of moderately extensive medullary infarcts. (Ex. 1F/58; 2F/54). When the claimant was seen for a follow-up of this condition at the Cleveland Clinic in April, 2018, her physician describes her as "doing well, since her last visit," but with continuing complaints of fatigue, intermittent palpitations, and tingling in her toes. The examination on that date included a skeleton survey that did not reveal any lytic bone lesions, and no joint swelling, deformity or tenderness on physical exam. This bone survey also confirmed no progression of the previously found degenerative changes in the cervical and lumbar spine. (Ex. 6F/8, 13, 40; 7F/170; 8F/3, 9).

Because of her history of avascular necrosis, the claimant regularly had X-ray imaging to evaluate the status of her hips. This imaging continued to show intact hardware and no signs of instability, but also revealed diffuse lumbar degenerative facet arthritis and lumbosacral spondylosis. (Ex. 2F/157; 7F/131, 171). The claimant also had X-rays of her knees, which showed bone infarcts and mild arthritis. (Ex. 7F/175). At an orthopedic consultation in June, 2018, physical examination showed no loss of range of motion in the hips and knees and a normal gait, but mild tenderness to palpation throughout the lower extremities, and tenderness over the hip joints. (Ex. 8F/33).

On May 8, 2018, the claimant saw Jeff Kirschman, M.D. for a consultative examination to evaluate her allegations regarding her physical impairments. The claimant reported daily activities that included cleaning the house once a week, washing laundry with assistance, and shopping once weekly. She said that she was capable of performing self-care activities and spent her days watching TV, listening to the radio and reading. Dr. Kirschman performed a physical examination that included muscle strength and range of motion testing. He found some reduction in a full range of motion in the hips, knees, and shoulders, and a reduction to 4/5 in upper and lower extremity strength. Other physical examination findings include tenderness in the paracervical's and paralumbar's, tenderness along the joint line with crepitus in the knees, mild knee, elbow, wrist, and hand swelling. He also found a decrease in sensation in the lower extremities. (Ex. 4F/5-11). Dr.

5

> Kirschman's opinion following the examination is not persuasive
> because it is vague and not consistent with the balance of the
> medical evidence in the record.
>
> On May 29, 2019, at the request of the claimant's primary care
> provider, Brett Balis, PT, conducted a physical capacity evaluation
> at the Cleveland Clinic Rehabilitation and Sports Therapy
> Department. His examination documents the claimant's
> performance on a number of tasks, and the report of this evaluation
> indicates that she was able to lift and carry 12 pounds, both to
> waist height and overhead, push and pull 17 horizontal force
> pounds, and demonstrated an occasional tolerance for above
> shoulder reach, bending, fine and gross coordination, and walking.
> (11F/2; 16F/38)[.]

(ECF No. 12, PageID #: 101-103).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 3. The claimant has the following severe impairments: stroke;
> connective tissue disease; lupus; bilateral hip replacements;
> breathing disorder; osteoarthritis and allied disorders; and
> peripheral neuropathy. (20 CFR 404.1520(c)).
>
> […]
>
> Because the claimant's medically determinable mental
> impairments cause no more than "mild" limitation in any of the
> functional areas and the evidence does not otherwise indicate that
> there is more than a minimal limitation in the claimant's ability to
> do basic work activities, they are nonsevere (20 CFR
> 404.1520a(d)(1)).
>
> 5. After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to
> perform sedentary work, with additional limitations. She is limited
> to lifting/carrying within the range of light exertion, with the
> ability to lift/carry 20 pounds occasionally and 10 pounds
> frequently. However, she is limited to the sedentary level of
> exertion because she can stand/walk for no more than four hours in
> a work day, and sit for up to six hours in a work day. She can
> handle, finger and feel items frequently with the left hand and with
> the right hand. The claimant can climb ramps and stairs
> occasionally; never climb ladders, ropes, or scaffolds; occasionally

balance, stoop, kneel, and crouch; and never crawl. The claimant can never work at unprotected heights or around dangerous moving mechanical parts or perform commercial driving. She can have no exposure to vibration. She can push and pull occasionally with all four extremities.

6. The claimant is capable of performing several jobs that the undersigned finds to be her past relevant work past relevant work. These occupations do not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2017, through the date of this decision (20 CFR 404.1520(f)).

## V. Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial

evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## B.  Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

## C.  Discussion

Claimant's issue has two parts: 1) whether substantial evidence supports the ALJ's determination that Claimant's mental impairments were not severe; and 2) whether the ALJ sufficiently analyzed Claimant's symptoms.

The Claimant argues that the ALJ erred by finding that her depression was not "severe" and that substantial evidence does not support the RFC. The Commissioner argues that the non-severity finding is consistent with the medial evidence. Here, the ALJ failed to address Claimant's mental limitations following his decision at Step 2 that her mental limitations were nonsevere. Because the decision lacks evidence that the ALJ properly considered Claimant's mental medically determinable impairments when determining the RFC, remand is necessary.

As noted, the ALJ found that Claimant's depression was not a severe impairment.  (*See* ECF No. 12, PageID #: 96-98).   The Court will not disturb that finding here. "In the Sixth Circuit, the severity determination is 'a de minimis hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (*quoting Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Id.* "The goal of the test is to 'screen out totally groundless claims.'" *Id.* (*quoting Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)). However, the failure to find an impairment severe is harmless error where other impairments are deemed severe. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

The ALJ found that Claimant suffered numerous severe impairments: "stroke; connective tissue disease; lupus; bilateral hip replacements; breathing disorder; osteoarthritis and allied disorders; and peripheral neuropathy." (ECF No. 12, PageID #: 96). Therefore, Claimant "cleared step two of the analysis." *Anthony*, 266 F. App'x at 457. "This caused the ALJ to consider [Claimant's] severe and nonsevere impairments in the remaining steps of the sequential analysis. The fact that some of [Claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Id.* (*citing Maziarz*, 837 F.2d at 244). However, as discussed

9

below, the decision does not indicate that the ALJ considered Claimant's mental impairments in the remainder of the decision and when determining the RFC; thus, remand is required.

"When formulating an RFC, an ALJ must consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Kochenour v. Comm'r of Soc. Sec. Admin.*, No. 3:14-CV-2451, 2015 WL 9258609, at *6 (N.D. Ohio Dec. 18, 2015) (quotation marks and alteration omitted) (*citing LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 388 (6th Cir. 2013) ("[T]he ALJ's assessment of residual functional capacity reflects a claimant's functional capacity in light of all his limitations, not just those that are severe."); SSR 96-8p, 61 Fed. Reg. at 34477("In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'")). The ALJ must do so because:

> [w]hile a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

*Patterson v. Colvin*, No. 5:14-cv-1470, 2015 WL 5560121, at *4 (N.D. Ohio Sept. 21, 2015) (citations omitted). Said differently, "'an ALJ's conclusion that an impairment is non-severe is not tantamount to a conclusion that the same impairment . . . does not impose any work-related restrictions.'" *Kochenour*, 2015 WL 9258609, at *6 (*quoting Patterson*, 2015 WL 5560121, at *4).

In this case, the ALJ found Claimant had physical impairments but no severe mental impairments. The ALJ concluded Claimant's mental impairments were nonsevere after determining that she has no more than mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. (ECF No. 12, PageID #:98).  If the Commissioner rates the degree of limitation as none or mild, then the Commissioner will generally conclude that the impairment is not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d). That the ALJ found Claimant had mild limitations in regards to the functional areas does not mandate inclusion of limitations in the RFC. *See, e.g., Little v. Comm'r of Soc. Sec.*, No. 2:14-cv-532, 2015 WL 5000253, at *13-14 (S.D. Ohio Aug. 24, 2015) (finding no error where ALJ did not include RFC limitations to address findings of mild mental limitations); *Caudill v. Comm'r of Soc. Sec.*, No. 2:16-CV-818, 2017 WL 3587217, at *5 (S.D. Ohio Aug. 21, 2017) (finding that mild mental impairment does not require inclusion of mental limitations in RFC); *Walker v. Astrue*, No. 3:11-cv-142, 2012 WL 3187862, at *4-5 (S.D. Ohio Aug. 3, 2012) (finding that substantial evidence supported the ALJ's determination that the claimant's mental impairments were mild enough not to warrant specific RFC limitations). Although an ALJ is not obligated to discuss every piece of information in the record, he must "consider[ ] all of a claimant's medically determinable impairments" and support the opinion with substantial evidence. *Lee v. Berryhill*, Case No. 1:17-cv-1865, 2018 WL 3970553, at *3 (N.D. Ohio Aug. 20, 2018); *Amir v. Comm'r of Soc. Sec.*, 705 F. App'x 443, 450 (6th Cir. 2017).

Here, the ALJ supported his Step 2 determination with the medical experts' opinions. The ALJ explained that:

> Based on his psychological consultative examination of the claimant, Dr. Konieczny opined that the claimant's depressive symptoms would cause diminished tolerance for frustration and diminished coping skills that would impact her ability to "respond to severe supervision," but would be able to respond appropriately to normal supervision and interpersonal situations. He also found that she would have diminished capacity to respond to "severe stress situations," but would be capable of responding appropriately to normal work pressures. (Ex. 5F/4-5). Dr. Konieczny's opinion is generally persuasive, as it is consistent with his observations during his examination.
>
> The state agency psychological consultants who reviewed the evidence at the initial and reconsideration level of the claim, Joseph Edwards, Ph.D., and Kristen Haskins, PsyD. found that the claimant has no more than mild limitations in any area of mental functioning, and therefore does not have a severe mental impairment. (Ex. 1A/10; 3A/7). As this is consistent with the evidence discussed above, the shared opinion of the state agency psychological consultants is persuasive.

(ECF No. 12, PageID #: 97). Thereafter, the ALJ indicated his understanding that the Step 2 finding is not the final step in which he must consider Claimant's mental impairments:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(ECF No. 12, PageID #: 98).

Despite this recognition, the ALJ failed to analyze Claimant's mental impairment at any point after the Step 2 analysis. The Commissioner states that the "ALJ continued with the sequential evaluation and considered Plaintiff's alleged mental impairment, though non-severe, during the RFC analysis[.]" (ECF No. 17 at 12 (citing ECF No. 12, PageID #: 27)). However, at that point of the ALJ's decision, the ALJ only mentions Claimant's treatment with a psychologist

12

in his summary of her testimony: "The claimant also said that she has become depressed by her loss of functioning and physical pain. She said that she sees a psychologist and feels overwhelmed." (ECF No. 12, PageID #: 27). There is no discussion of Claimant's mental health conditions, nor how they were considered by the ALJ in determining Claimant's RFC.

The Court concludes that the RFC lacks substantial evidence as there is no indication that the ALJ considered Claimant's mental limitations after the Step 2 analysis. Accordingly, remand is required.

Because the Court finds that remand is required due to the ALJ's failure to explain his consideration of Claimant's mental impairments, it will not address Claimant's argument that the ALJ failed to properly analyze Claimant's complaints pursuant to SSR 16-3p.

## VI. Conclusion

Because the RFC lacks substantial evidence, the Court REVERSES the Commissioner of Social Security's nondisability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**IT IS SO ORDERED.**

DATED: December 15, 2021

_s/Carmen E. Henderson_____
Carmen E. Henderson
United States Magistrate Judge